## Staunton

NATIONAL LINEN SERVICE CORPORATION, TRADING &C. V.
CITY OF NORFOLK, A MUNICIPAL CORPORATION, AND
EDWIN RUSSELL HOUSE, SUPERINTENDENT &C.

September 8, 1954.

Record No. 4254.

Present, All the Justices.

The opinion states the case.

*Sacks & Sacks*, for the appellant.

*Jonathan W. Old, Jr.* and *Joseph E. Baker*, for the appellees.

SMITH, J., delivered the opinion of the court.

The appellant, National Linen Service Corporation, trading as Norfolk Linen Service, instituted this suit against the city of Norfolk and Edwin Russell House, Superintendent of Dairy and Food Division of the city of Norfolk, praying that § 19-28, Article 1, of the 1950 Code of the City of Norfolk[1] "be declared null, void and unconstitutional; that the said Edwin Russell House, his agents and servants be permanently enjoined and restrained from prohibiting the use of sanitary cloth towels in restaurants in the city of Norfolk."

The evidence was heard *ore tenus* and by its decree of August 3, 1953, the trial court held that the ordinance complained of was valid, and that "the towels in evidence as used in food establishments are common towels," and dismissed the bill.

The record shows that for the past twenty-one years the appellant has been engaged in the business of laundering

---

[1] *"Sec. 19-28. Common towels.*
"The use of any common towel in any food establishment is prohibited. There shall be provided sanitary paper towels."

and supplying linens and cloth towels in the city of Norfolk and a large portion of this business consisted of renting and supplying cloth towels to food establishments. These towels are of two types. The first type is fifty yards long and wound on a roller which is placed in a cabinet in such fashion that as much of the towel as the prospective user wants is released by pulling. The towel is so arranged that the used portion is wound on another roller in the back of the cabinet. When the entire roll is used a small part of the end extends from the cabinet showing that all the towel has been used. The second type consists of as many as 125 individual cloth towels on a chain. After each of these individual towels has been used it is dropped down the chain into an open receptacle on the floor. It is undisputed that the appellant delivers both types of towels to the various food establishments in Norfolk cleanly washed, laundered and sanitary and that it will furnish a customer with as many of the towels as he wants.

As stated by the appellant, two questions are presented by its eight assignments of error: 1. Is § 19-28 of the Code of the City of Norfolk invalid? 2. Are the towels supplied by the appellant to food establishments in the city of Norfolk common towels? We shall first consider the question of validity of the ordinance.

The rule is generally recognized that municipal corporations are *prima facie* sole judges respecting the necessity and reasonableness of their ordinances, and the presumption of their validity governs unless it is overcome by unreasonableness apparent on the face of the ordinance or by extrinsic evidence which clearly establishes the unreasonableness. This presumption is based upon the broad general principle that every intendment will be made in favor of the lawfulness of the exercise of municipal power. *Repass* v. *Town of Richlands*, 163 Va. 1112, 178 S. E. 3; *Wood* v. *City of Richmond*, 148 Va. 400, 138 S. E. 560; *Elsner Brothers* v. *Hawkins*, 113 Va. 47, 73 S. E. 479; *Wagner* v. *Bristol Belt*

*Line Co.*, 108 Va. 594, 62 S. E. 391; 5 McQuillin on Municipal Corporations, (3rd ed.), § 18.23, p. 455.

While there is thus a presumption in favor of the propriety and validity of municipal ordinances, if the city abuses the confidence reposed, the courts will not hesitate to declare its acts void. The reason for this rule is that there is an implied restriction that the city's enactments will be reasonable, consistent with the general law and policy of the state, uniform in their operation, and promotive rather than destructive of lawful business and occupations. *Danville* v. *Hatcher*, 101 Va. 523, 44 S. E. 723; 5 McQuillin on Municipal Corporations, (3rd ed.), § 18.04, p. 392; 13 Michie's Jurisprudence, Municipal Corporations, § 27, p. 396.

"It is settled by the concurrence of almost innumerable authorities that a municipal ordinance is required not only to be constitutional, but to be reasonable as well, where it is enacted under general charter powers, general state statutes affecting municipalities, or other general or implied grant of power. The ordinance must, according to the explicit statement of many of the courts, attain reasonableness by being fair, general, and impartial in operation, not in conflict with common right, and not unduly oppressive upon individuals." 37 Am. Jur., Municipal Corporations, § 157, at page 770.

The rule in Virginia has been stated by Justice Hudgins, now Chief Justice, in *Richmond-Ashland* v. *Commonwealth*, 162 Va. 296, 307, 173 S. E. 892, thus:

" 'Where the legislature in terms, confers upon a municipal corporation the power to pass ordinances of a specific and defined character, if the power thus delegated be not in conflict with the Constitution, an ordinance passed pursuant thereto cannot be impeached because it would have been regarded as unreasonable if it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done cannot be set aside by the courts because they may deem it unreasonable, or against

sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid.' "

Hence the authority conferred under a general or implied grant of power must be exercised reasonably, in good faith, and bear a real and substantial relation to the public health, safety, morals or general welfare of the city's inhabitants. In addition, ordinances which in their operation necessarily restrain competition and tend to create monopolies or confer exclusive privileges are generally condemned. Whether a particular ordinance enacted pursuant to a general grant of power is arbitrary and unreasonable, and therefore void, is a question for the court, and there is no specific formula by which its reasonableness can be tested. However, the court will consider all the circumstances; not only what has been done under the ordinance but what may be done, the objects sought to be attained and the necessity which exists for the ordinance. *Richmond-Ashland* v. *Commonwealth, supra; Richmond* v. *Model Steam Laundry,* 111 Va. 758, 69 S. E. 932; *Standard Oil Co.* v. *Charlottesville,* 42 F. (2d) 88; 5 McQuillin on Municipal Corporations, (3rd ed.), §§ 18.06, 18.16, pp. 396, 434.

Thus, an ordinance in *Parrish* v. *Richmond,* 119 Va. 180, 89 S. E. 102, regulating the granting of a license to operate a car for hire which required the applicant to be the owner of the vehicle, was held unreasonable and therefore void. See also, *Kirkham* v. *Russell,* 76 Va. 956. On the other hand, an ordinance in *City of Roanoke* v. *Fisher,* 137 Va. 75, 119 S. E. 259, which prohibited the business of selling diamonds, watches and clocks at public auction between 6:00 p. m. and 8:00 a. m., was held valid because of the difficulty of inspecting the goods or determining their value under artificial light and because purchasers had been and would be misled and defrauded at sales during the prohibited hours. For other examples, see 5 McQuillin on Municipal

Corporations, (3rd ed.), c. III, Restraint of Trade, Business of Occupations, p. 434.

Section 19-28 of the Code of the City of Norfolk, here attacked, was enacted under the authority of a general grant of power from the legislature.[2] It prohibits "the use of any common towel in any food establishment" and provides that there "shall be provided sanitary paper towels." There is some uncertainty as to whether this ordinance prohibits the use of all towels except sanitary paper towels or whether non-common sanitary towels not made of paper may be used in addition to sanitary paper towels. The trial court took the view that the ordinance required that sanitary paper towels be used to the exclusion of all others. The appellees' view is expressed in the argument of counsel before this court that even if cloth towels were wrapped in cellophane and could be used only one time, still food establishments in the city of Norfolk would be required by § 19-28 to provide sanitary paper towels.

The appellant contends that the ordinance so construed is invalid because: 1. It is unreasonable, arbitrary, oppressive, and bears no real or substantial relation to the protection of the public health, since sanitary cloth towels are, indisputably, as safe for the public health as sanitary paper towels. 2. There is no reasonable distinction between the use of a sanitary cloth towel and a sanitary paper towel and therefore the ordinance arbitrarily discriminates in favor of persons and corporations selling paper towels by giving them an unfair monopoly

---

[2] Subsection (16) of § 2 of the Charter of the City of Norfolk, in part provides:

" * * * and generally to define, prohibit, abate, suppress and prevent all things detrimental to the health, morals, comfort, safety, convenience and welfare of the inhabitants of the city."

Subsection (23) of § 2 of the Charter of the City of Norfolk, in part provides:

"To provide for the preservation of the general health of the inhabitants of said city, make regulations to secure the same, * * * prevent the introduction or spread of contagious or infectious diseases, and prevent and suppress diseases generally; * * * ." (See Acts 1918, ch. 34, p. 33; Acts 1919, Ex. Sess., ch. 68, p. 107.)

against persons and corporations furnishing sanitary cloth towels. 3. It is in conflict with § 19-9 of the Code of the City of Norfolk,[3] and § 32-60 of the Code of Virginia.[4]

The appellees, on the other hand, say § 19-28 is not unreasonable, arbitrary, oppressive, discriminatory or monopolistic because it tends to prevent the spread of disease by assuring a single use of each towel, which is the only practical way to attain this aim; and that it has a direct relation to the public health and is appropriate to that end under the authority of § 2, subsections (16) and (23) of the Charter of the City of Norfolk. See footnote 2, *supra*. More specifically, the appellees say that although appellant's towels may be sanitary when delivered they are more apt to be misused than paper towels; that paper towels are more easily obtained when food establishments run out of towels; that the patrons of food establishments would be more likely to report the absence of paper towels; and that there is a possibility of cloth towels becoming contaminated when touched by human hands.

These contentions are merely conjectural and are equally applicable to towels made of paper. The undisputed evidence is that when appellant delivers its cloth towels to food establishments in Norfolk they are clean and sanitary. While the city of Norfolk has the power to enact ordinances which prohibit the use of common towels and require that sanitary towels be used in food establishments, it may not

---

[3] "*Sec. 19-9. Lavatory facilities.*

"Adequate and convenient hand-washing facilities shall be provided, including hot and cold running water, soap, and approved sanitary towels, in every food establishment. The use of a common towel is prohibited. * * * "

[4] Section 32-60 of the Virginia Code, 1950, provides:

"*Towels for common use prohibited.*—It shall be unlawful * * * to place, furnish or keep in place in any * * * public lavatory or washroom, any towel for the common public use, or for the use by employees in such establishments, and no person, * * * in charge or control of any such place shall permit in such place the use of the common towel, 'roller towel' or towels intended or available for common use by more than one person without being laundered after such use. * * * ."

arbitrarily restrict the use of sanitary towels to sanitary paper towels or arbitrarily require that sanitary paper towels be used in addition to sanitary towels made of some material other than paper. Such an ordinance bears no real or substantial relation to the public health and is an unreasonable and arbitrary enactment.

Appellees rely on *Cavalier Vending Corporation, et al* v. *State Board of Pharmacy, et al.,* 195 Va. 626, 79 S. E. (2d) 636, in support of their contention that § 19-28 is not discriminatory, oppressive or monopolistic. There we held valid a statute, Code, § 18-89.1 (2), which prohibited all persons alike from selling any prophylactic rubber goods by means of automatic vending machines. Here, however, we have a prohibition against the use of all sanitary cloth towels solely because they are not made of paper, which is not a reasonable basis for distinction. Therefore the ordinance arbitrarily discriminates in favor of persons and corporations selling paper towels by giving them an unfair monopoly against persons and corporations furnishing sanitary cloth towels. Consequently, we hold invalid the provision of § 19-28 of the Code of the City of Norfolk which states, "There shall be provided sanitary paper towels."

Our decision does not, however, affect the remaining provision of § 19-28, which prohibits the use of any common towel, because of § 1-3 (separability provision) of the Code of the City of Norfolk,[5] which is similar to the one referred to in *King* v. *County of Arlington,* 195 Va. 1084, 1092, 81 S. E. (2d) 587, where we said:

"The effect of such provision is to create the presumption that the ordinance is severable and that the valid portion may stand even though a portion is invalid. *Hannabass* v. *Maryland Casualty Co.,* 169 Va. 559, 571, 194 S. E. 808,

---

[5] "*Sec. 1-3. Separability.*

"If any part or parts, section or subsection, sentence, clause or phrase of this Code is for any reason declared to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Code."

813; *Carter* v. *Carter Coal Co.*, 298 U. S. 238, 312, 56 S. Ct. 855, 873, 80 L. ed. 1160."

The use of common towels is also prohibited by § 19-9 of the Code of the City of Norfolk and by § 32-60 of the Code of Virginia, and any conflict which may have existed between them and § 19-28 has now been removed by our decision in ·this case. The fact that the penalty for the violation of the two ordinances is greater than that provided for in the statute does not invalidate the ordinances. *Allen* v. *City of Norfolk*, 195 Va. 844, 80 S. E. (2d) 605, decided this day on rehearing.

Section 19-9 of the Code of the City of Norfolk requires the use of "approved sanitary towels" and prohibits the "use of a common towel." The director of public health is the individual charged in § 19-30 of the Code of the City of Norfolk with the duty of determining what towels are "sanitary towels," and the standard by which he performs this duty is that common towels must be disapproved and all others must be approved if in fact sanitary.

We turn now to the second question presented, that is, whether the towels supplied by the appellant to food establishments in the city of Norfolk are common towels.

While the trial court in its decree said, "the towels in evidence as used in food establishments are common towels," the comments and questions of the court show that it determined only one issue, namely, the validity of § 19-28 of the Code of the City of Norfolk. During the trial the court made the following comment: "In other words, one Section [§ 19-9] says it is unlawful to have one towel, or common towel, in any kind of place. The other Section [§ 19-28] you read, as having to do with restaurants or places where food is served, and in that particular it is required that paper towels and not cloth towels be used. That is the proposition here, whether the city has the power to require paper towels. * * * One designates restaurants in the city and says you have to have paper towels. Whether the city has the power to say in eating places

you have to have paper towels, that is the issue here." An additional indication of the court's opinion of the issue in the case is found in its questioning of the Director of Public Health of the city of Norfolk:

"Q. Is it a necessary safeguard to the public health that paper towels be used in food establishments?

"A. I will answer this way: In safeguarding the public health, I have got to take what is the probably recognized best method and do that.

"Q. Right there, is it generally recognized in other cities that have made a study of it, that the paper towel is better for the protection of public health, and commonly used throughout the United States?

"A. Yes, I think it is generally accepted the paper towel is preferable from a protection standpoint."

It is true that some of the evidence which was pertinent to the issue of whether § 19-28 was valid, was also pertinent to the issue of whether appellant's towels were common towels, however, when the court decided that § 19-28 was valid, which, in its expressed opinion, was the only issue in the case, the use of appellant's towels in food establishments was necessarily prohibited because not made of paper. The court did not, therefore, factually determine independently of and separately from the question of the validity of § 19-28 that appellant's towels were common towels. Hence, the case must be remanded for a new trial on the issue of whether either or both types of appellant's towels are common towels as hereinafter defined.

Appellant says "common towel," as used in §§ 19-9 and 19-28 of the Code of the City of Norfolk, "means a towel that is intended to be used by more than one person." Appellees say it is "one which may be used by more than one person. The fact that it is not so used does not make it any less a common towel." Since § 32-60 of the Code of Virginia deals with common towels, we will examine its history and background in an effort to arrive at the legislative meaning of "common towel."

By Acts 1916, p. 321, c. 160, the legislature prohibited the use of "roller towels or other towels used in common." Then by Acts 1916, p. 496, c. 278,[6] the legislature, in effect, included the prior act and prohibited the "use of the common towel" and expressly provided that, "The term 'common towel' as used herein shall be construed to mean 'roller towel' and towels intended or available for common use by more than one person without being laundered after such use." The code revisors in § 1517 of the Code of 1919 used the exact language found in footnote 6 except for the material there italicized. The present Code, § 32-60 is identical with § 1517 of the Code of 1919 except for certain changes made in Acts 1946, p. 233, c. 159, which are here immaterial. Thus, since 1916 the legislature has prohibited in public places the use of any towel including a "roller towel" which is intended for or reasonably subject to reuse. See *Irvine v. Commonwealth*, 124 Va. 817, 97 S. E. 769.

Therefore, in view of the conflicting contentions of the parties and for the guidance of the trial court upon a retrial, we define "common towel" to mean any towel including a "roller towel" which is intended or reasonably available for common use by more than one person without being laundered after such use.

For the reasons stated the decree appealed from is reversed, the bill is reinstated and the case is remanded for a new trial on the issue of whether either or both types of appellant's towels are common towels as herein defined.

*Reversed and remanded.*

---

[6] "1. Be it enacted by the general assembly of Virginia, That it shall be unlawful for any person, firm or corporation to place, furnish or keep in place in any hotel, office building, railway train, railway station, public or private school, public lavatory or washroom, any towel for the common public use, and no person, firm or corporation in charge or control of any such place shall permit in such place the use of the common towel.

"2. *The term 'common towel' as used herein shall be construed to mean* 'roller towel' and towels intended or available for common use by more than one person without being laundered after such use." (Italics supplied.)